| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF LANCASTER | ) | |
| | ) | CIVIL ACTION COVERSHEET |
| Kenneth Baucom, | ) | |
| Plaintiff(s) | ) | 2008- CP - 29 - 071 |
| | ) | |
| vs. | ) | |
| | ) | |
| ZF Commercial Suspension Sytems, et al, | ) | |
| Defendant(s) | ) | |

| | | |
|---|---|---|
| (Please Print) | SC Bar #: | 3487 |
| Submitted By: Benjamin M. Mabry | Telephone #: | (803) 799-9530 |
| Address: 1225 Pickens Street, Post Office Box 11675 | Fax #: | (803) 239-0210 |
| Columbia, South Carolina 29211-1675 | Other: | |
| | E-mail: | cromermabry@cromermabry.com |

NOTE: The cover sheet and information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is required for the use of the Clerk of Court for the purpose of docketing. It must be filled out completely, signed, and dated. A copy of this cover sheet must be served on the defendant(s) along with the Summons and Complaint.

## DOCKETING INFORMATION *(Check all that apply)*

*\*If Action is Judgment/Settlement do not complete*

☒ JURY TRIAL demanded in complaint.     ☐ NON-JURY TRIAL demanded in complaint.

☐ This case is subject to ARBITRATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☐ This case is subject to MEDIATION pursuant to the Court Annexed Alternative Dispute Resolution Rules.

☒ This case is exempt from ADR (certificate attached).

## NATURE OF ACTION *(Check One Box Below)*

| Contracts | Torts - Professional Malpractice | Torts – Personal Injury | Real Property |
|---|---|---|---|
| ☐ Constructions (100) | ☐ Dental Malpractice (200) | ☒ Assault/Slander/Libel (300) | ☐ Claim & Delivery (400) |
| ☐ Debt Collection (110) | ☐ Legal Malpractice (210) | ☐ Conversion (310) | ☐ Condemnation (410) |
| ☐ Employment (120) | ☐ Medical Malpractice (220) | ☐ Motor Vehicle Accident (320) | ☐ Foreclosure (420) |
| ☐ General (130) | ☐ Notice/ File Med Mal (230) | ☐ Premises Liability (330) | ☐ Mechanic's Lien (430) |
| ☐ Breach of Contract (140) | ☐ Other (299) | ☐ Products Liability (340) | ☐ Partition (440) |
| ☐ Other (199) | | ☐ Personal Injury (350) | ☐ Possession (450) |
| | | ☐ Wrongful Death (360) | ☐ Building Code Violation (460) |
| | | ☐ Other (399) | ☐ Other (499) |

| Inmate Petitions | Judgments/Settlements | Administrative Law/Relief | Appeals |
|---|---|---|---|
| ☐ PCR (500) | ☐ Death Settlement (700) | ☐ Reinstate Driver's License (800) | ☐ Arbitration (900) |
| ☐ Sexual Predator (510) | ☐ Foreign Judgment (710) | ☐ Judicial Review (810) | ☐ Magistrate-Civil (910) |
| ☐ Mandamus (520) | ☐ Magistrate's Judgment (720) | ☐ Relief (820) | ☐ Magistrate-Criminal (920) |
| ☐ Habeas Corpus (530) | ☐ Minor Settlement (730) | ☐ Permanent Injunction (830) | ☐ Municipal (930) |
| ☐ Other (599) | ☐ Transcript Judgment (740) | ☐ Forfeiture (840) | ☐ Probate Court (940) |
| | ☐ Lis Pendens (750) | ☐ Other (899) | ☐ SCDOT (950) |
| | ☐ Other (799) | | ☐ Worker's Comp (960) |
| | | | ☐ Zoning Board (970) |
| | | | ☐ Administrative Law Judge (980) |
| | | | ☐ Public Service Commission (990) |
| | | | ☐ Employment Security Comm (991) |
| | | | ☐ Other (999) |

| Special/Complex /Other | | |
|---|---|---|
| ☐ Environmental (600) | ☐ Pharmaceuticals (630) | |
| ☐ Automobile Arb. (610) | ☐ Unfair Trade Practices (640) | |
| ☐ Medical (620) | ☐ Out-of-State Depositions (650) | |
| ☐ Other (699) | | |

Submitting Party Signature: _____     Date: **January 15, 2008**

Note: Frivolous civil proceedings may be subject to sanctions pursuant to SCRCP, Rule 11, and the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. §15-36-10 et. seq.

## FOR MANDATED ADR COUNTIES ONLY
Florence, Horry, Lexington, Richland, Greenville and Anderson

SUPREME COURT RULES REQUIRE THE SUBMISSION OF ALL CIVIL CASES TO AN ALTERNATIVE DISPUTE RESOLUTION PROCESS, UNLESS OTHERWISE EXEMPT.

**You are required to take the following action(s):**

1. The parties shall select a neutral and file a "Proof of ADR" form on or by the 210th day of the filing of this action. If the parties have not selected a neutral within 210 days, the Clerk of Court shall then appoint a primary and secondary mediator from the current roster on a rotating basis from among those mediators agreeing to accept cases in the county in which the action has been filed.

2. The initial ADR conference must be held within 300 days after the filing of the action.

3. Pre-suit medical malpractice mediations required by S.C. Code §15-79-125 shall be held not later than 120 days after all defendants are served with the "Notice of Intent to File Suit" or as the court directs. (Medical malpractice mediation is mandatory statewide.)

4. Cases are exempt from ADR only upon the following grounds:

    a. Special proceeding, or actions seeking extraordinary relief such as mandamus, habeas corpus, or prohibition;

    b. Requests for temporary relief;

    c. Appeals

    d. Post Conviction relief matters;

    e. Contempt of Court proceedings;

    f. Forfeiture proceedings brought by governmental entities;

    g. Mortgage foreclosures; and

    h. Cases that have been previously subjected to an ADR conference, unless otherwise required by Rule 3 or by statute.

5. In cases not subject to ADR, the Chief Judge for Administrative Purposes, upon the motion of the court or of any party, may order a case to mediation.

6. Motion of a party to be exempt from payment of neutral fees due to indigency should be filed with the Court within ten (10) days after the ADR conference has been concluded.

**Please Note:**    **You must comply with the Supreme Court Rules regarding ADR.**
**Failure to do so may affect your case or may result in sanctions.**

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
)
COUNTY OF LANCASTER ) Civil Action No. ___08-CP-29-071___

Kenneth Baucom, )
                    Plaintiff, )
                                          )
        vs.                               )
                                          ) SUMMONS
ZF Commercial Suspension )
Systems & Components, LLC, ) (Jury Trial Demanded)
ZF Group North American )
Operations, Inc., and ZF )
Lemforder Corporation, )
Paul Stachura, Ryan Petroshus, )
Greg Henderson, Dennis Dedrick, )
Frank Petroshus and Kenneth Rose, )
                                          )
                    Defendants. )
_____ )

## TO THE DEFENDANTS ABOVE NAMED

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this
action, a copy of which is hereby served upon you and to serve a copy of your Answer to the said
Complaint on the subscriber at his office, located at 1225 Pickens Street, Columbia, South
Carolina 29201, within thirty (30) days after the service hereof, exclusive of the day of such
service, and if you fail to answer the Complaint within the time aforesaid, judgment by default
will be rendered against you for the relief demanded in the Complaint.

                              CROMER & MABRY

                        By: _____
                              Benjamin M. Mabry (SC #3487)
                              1225 Pickens Street
                              Post Office Box 11675
                              Columbia, South Carolina 29211-1675
                              Telephone:    (803) 799-9530
                              Facsimile:    (803) 239-0210
                              benmabry@cromermabry.com
                              cromermabry@cromermabry.com
                              ATTORNEY FOR PLAINTIFF

Columbia, South Carolina
January 15, 2008.

STATE OF SOUTH CAROLINA          )     IN THE COURT OF COMMON PLEAS
                                 )
COUNTY OF LANCASTER              )     Civil Action No. 08-29-071

Kenneth Baucom,                  )
                    Plaintiff,   )
        vs.                      )
                                 )          COMPLAINT
ZF Commercial Suspension         )
Systems & Components, LLC,       )     (Jury Trial Demanded)
ZF Group North American          )
Operations, Inc., and ZF         )
Lemforder Corporation,           )
Paul Stachura, Ryan Petroshus,   )
Greg Henderson, Dennis Dedrick,  )
Frank Petroushus and             )
Kenneth Rose                     )
                                 )
                    Defendants.  )
_____  )

Plaintiff, complaining of the Defendants herein, would allege and show unto this

Court that:

## FACTUAL ALLEGATIONS

### a.) Summary of Factual Allegations.

1.      This Complaint details the horrific, sadistic, often sexual, torture of the

Plaintiff. These atrocities included calling Plaintiff a gay man and a faggot in a hostile and

demeaning manner, regularly stripping him naked, painting his testicles black with felt tipped

permenant markers and beating him repeatedly. Plaintiff's co-worker assailants tied him up

with phone wire then viciously attacked him using various tools including sticks, broom

handles, boards and belts. At times his underwear was stapled to his buttocks using a staple

gun. Plaintiff was demeaned because he allegedly engaged in homosexual relations and for

acting in a mild, effeminate manner. The sadistic torture of the Plaintiff occurred over a

1

period exceeding four years. As alleged below, management authorized, participated in, condoned, and ratified these atrocities and more.

### b.) The Factual Allegations.

2.    That the Plaintiff is a citizen and resident of North Carolina and at all relevant times to these claims, worked for the Defendants ZF Commercial Suspension Systems & Components, LLC and ZF Lemforder Corporation located in Lancaster, South Carolina.

3.    That ZF Commercial Suspension Systems & Components, LLC and ZF Lemforder Corporation (hereinafter referred to collectively as "ZF" or "Defendants ZF") are corporations organized and existing pursuant to the laws of a state of the United States of America and at all relevant times one or both were the employers of the Plaintiff.

4.    That said Defendants are in business manufacturing and selling automotive parts in Lancaster, South Carolina at the facilities where Plaintiff works.

5.    That, upon information and belief, ZF Group North America Operations, Inc. (ZF North America) is a corporation organized and existing pursuant to the laws of the State of Delaware.

6.    That, upon information and belief, the three ZF companies mentioned above are under some degree of supervision and/or ownership by ZF Friedrichshafen AG, a German company. According to its website ZF Friedrichshafen and its worldwide subsidiaries have a workforce of over 53,000 people employed at 119 locations in 25 countries with combined revenues for the group of over 10 billion dollars as of the end of its fiscal year in 2003.

7.    That at no time was the Plaintiff an employee of ZF North America.

2

8.     That upon information and belief, Defendants Paul Stachura, Greg Henderson, Ryan Petroshus, are residents of South Carolina, Frank Petroshus is a resident of Michigan and Dennis Dedrick is a resident of North Carolina. Said Defendants at all relevant times were the controlling, top and/or senior managers and/or officers of ZF Commercial Suspension Systems & Components, LLC and ZF Lemforder Corporation. At all relevant times they were working or acting as the ZF Defendant companies, its alter egos and/or were acting in the course and scope of their employment with the Defendant ZF companies. That said Defendants had knowledge generally or specifically of the atrocities committed against the Plaintiff and through their actions and willful failure to act caused, condoned, and ratified the torture, abuse and harassment of the Plaintiff as alleged herein below.

9.     That Defendant Kenneth Rose, upon information and belief, is the senior Human Resources Director of ZF North America and supervises Defendant Paul Stachura and the personnel/human resources departments of the ZF Defendants. At all relevant times he was acting in the course and scope of his employment.

10.     That Defendant Rose knew or should have known of the atrocities committed against the Plaintiff and that the ZF Defendants participated in, were aware of, encouraged, condoned and ratified them.

11.     That beginning approximately four and a half years ago (with such conduct continuing into the second half of 2007) a number of ZF employees and their management began to openly and harshly harass the Plaintiff, Kenneth Baucom, at the ZF Lancaster facilities where he worked. This harassment included calling him gay, accusing him of being a fagot, asking him what length of large diameter pipe and hose he could take up his rear end, and other similar statements. These statements, directed

3

at the Plaintiff, accused him of being homosexual and of practicing sodomy. Harassment of the Plaintiff occurred daily and was known throughout the facilities, including by management. The sexual harassment was reported repeatedly to management, but no actions were taken to stop the abuse. To the contrary, ZF management personally witnessed, participated in, laughed at, encouraged and approved the sadistic harassment and torture of the Plaintiff as described below.

12.     The reporting of the sadistic harassment of Plaintiff to management resulted in no remedial response. Moreover, when management overtly approved of and participated in the harassment, the horrific regimen of torture of Plaintiff grew worse, increasing in frequency and degree to an extent of which shocks even the most jaded conscience. The grotesque and shameful atrocities inflicted upon the Plaintiff were often sexual in nature and were frequently witnessed by numerous persons including ZF employees, ZF management, temporary employees and truck drivers from USF Holland and other trucking companies. Four witnesses have provided Plaintiff's counsel with written and/or oral statements detailing these atrocities. The frequency and regularity of the atrocities with management's direct approval and participation made them a term and condition of Plaintiff's employment.

13.     Management of the ZF Defendants witnessed, was aware of, condoned, encouraged, and often participated in the sexual harassment and torture of the Plaintiff. That the Plaintiff and certain of his co-employees reported the offensive conduct to management on many occasions. One co-worker, Angela Waldrop, reported the sadistic torture and sexual harassment of Plaintiff, as well her own sexual harassment, well over one hundred times, but since ZF condoned, approved of and participated in the actions,

4

the reports had no effect whatsoever; the torture simply continued day in and day out, month after month, year after year.

14.    That the actions of the Defendants in torturing and otherwise harming Plaintiff were made maliciously, willfully and with specific intent to harm him in the way that did in fact occur.  The Plaintiff did not consent to or approve of the atrocities inflicted upon him.  At times he was compelled to pretend to "go along" with the horrors in an effort to convince his perverted torturers to go easier on him.

15.    The sadistic torture of the Plaintiff, as alleged, was an ordinary incident of his employment with Defendants ZF.  The torture, humiliation and degradation of Plaintiff was not accidental, as it occurred with management's knowledge, approval, encouragement and participation, for many years.  Much of the specific torture and humiliation of Plaintiff occurred on a daily, regular basis.  Plaintiff's submissions to these horrific and sub-human atrocities were a condition of his employment with Defendants ZF.

16.    Defendants ZF, and/ or their alter egos, acted with deliberate and specific intent to harm Plaintiff.  Defendants ZF assaulted, battered, horribly tortured, humiliated, degraded and otherwise severely harmed Plaintiff both physically and emotionally.  Defendants ZF, its managers and a number of its employees gained a perverted and sadistic pleasure from the physical and emotional atrocities inflicted upon the Plaintiff.  His submission to the atrocities as set forth herein, upon information and belief, were, as stated above, made the terms and conditions of Plaintiff's continued employment with ZF and constituted his ordinary and regular working conditions.  The atrocities were not accidental and were perpetrated by the Defendants with the specific intent to harm Plaintiff.

5

17.     Many people witnessed most, if not all, of this conduct which occurred at ZF's Lancaster facilities. Plaintiff's counsel has interviewed three people, in addition to the Plaintiff, who have confirmed most of these atrocities, including a female employee who currently works at the plant. This witness, a longtime ZF employee, provided the Plaintiff's counsel, in the presence of Defendants ZF's lawyers, a detailed interview which confirmed much of the sadistic physical and emotional torture of the Plaintiff as detailed below.

18.     That set forth in the subparagraphs below are examples of some of the sadistic torture, attacks, sexual harassment and sexual assault of the Plaintiff, virtually all of which has been corroborated by sources other than the Plaintiff. Virtually all of the horrors were known to Defendants ZF, and condoned, encouraged, and/or participated in by these corporations, their management and/ or their alter egos. These atrocities occurred at Defendants ZF's Lancaster facilities during normal working hours and became the normal terms and conditions of Plaintiffs employment with the ZF Defendants:

a)     That the Plaintiff was regularly and routinely stripped nude so that his buttocks and often his genitals were visible; he was often tied up with rope and/or telephone wire and beaten with a stick, board, broom or belt. A designated stick was kept in a certain location specifically to be used to beat and batter the Plaintiff. Visible, ugly bruises were often left on exposed parts of Plaintiff's body as a result of these beatings. Management of ZF Defendants had actual and constructive notice of these wounds. At times Plaintiff would be beaten over existing bruises. Some scars from these beatings, as well as a knife scar, remain on the Plaintiff's body today and appear to be permanent.

6

b)    That the Plaintiff's pants were pulled down and his underwear physically ripped off him. One one occasion while totally nude from the waist down, he was tied to a forklift with telephone wire and ridden about the plant. On one occasion, after his underwear was ripped off of him, it was hung from the plant's time clock for all to see, including truck drivers from other companies. Angela Waldrop went to Plaintiff's and her manager, Ryan Petroshus regarding this outrageous behavior. Petroshus and Lori Snipes, who worked for the Defendants ZF's Human Resources Department and performed HR investigations for this department, confronted the men in the area. Instead of coming to the aid of the Plaintiff they said the whole affair hilarious and called for an "underwear check," telling the men to drop their pants. The male workers did so showing their underwear. Baucom's underwear had previously been ripped off him and was hanging from the plant's time clock. Plaintiff's humiliation was therefore complete. The presence, encouragement and obvious approval of management including the ZF's Defendants Human Resources Department of this humiliating, sadistic torture of Mr. Baucom sent the clear signal that Defendants ZF approved of, condoned and encouraged these atrocities. Not surprisingly, the sadistic torture became more violent and cruel and continued to occur almost daily for years.

c)    That the Plaintiff was, on many occasions, stripped naked, pinned down or tied up and his testicles painted black with a felt-tipped marker. He would often be marred with permanent ink over much of his body.

d)    That frequently the Plaintiff was locked up in various locations with no means of escape. Once he was assaulted and shocked with a powerful stun gun.

7

e)    That frequently the Plaintiff's pants were pulled down to his ankles and his underpants were stapled to his buttocks using a mid-duty staple gun. This brutal treatment caused bleeding.

f)    That the Plaintiff was beaten with boards, belts, sticks and brooms on many occasions. In at least one terrible instance, his arm was bent around a chair with such force that co-employees watching the assault were fearful that Plaintiff's arm would be broken in two.

g)    That the Plaintiff was cut on his arm with a utility razor knife.

h)    That the Plaintiff at times experienced being totally wrapped in duct tape and left lying on the plant's floor helpless and terrified, and would have remained so if not for Angel Waldrop, who helped him when she could.

i)    That employees, with management's knowledge and approval, would urinate in Plaintiff's drinks when he did not suspect it. They would put foreign objects such as dead insects in his food. At least once, using human solid waste, they tried to convince him to eat a "brownie" made of feces.

j)    That on one occasion after Plaintiff was tied up and helpless, a male co-employee manipulated him sexually using hand soap and then later bragged about the sexual assault to other employees and management. As in the past, although aware of the torture, management did nothing, neither punishing much less terminating the perpetrators. Management of the ZF Defendants refused to protect the Plaintiff in the slightest and instead encouraged, condoned, ratified and participated in the horrific conduct.

8

k)    That Plaintiff's pants and underwear were pulled down virtually every day, some days more than thirty times. Often his underwear was painfully ripped from his body.

l)    That Plaintiff was frequently locked in a freight line truck while employees drove the truck at high speeds, taking sharp curves and stopping and starting to cause his body to be thrown about. At other times employees would take turns savagely beating Plaintiff in the back of such a truck.

j)    That employees would frequently call Plaintiff's wife and son at home from work, telling them that Plaintiff was having sex with men at the plant and other falsehoods.

19.    That one employee, Angela Waldrop, during the more than four years of the sadistic torture of the Plaintiff, frequently and regularly reported the sexual torture and abuse to management, specifically to Ryan Petroshus whose father, for much of the time, was president/plant manager of the Defendants ZF. These frequent reports did nothing to stop the sadistic terrorizing of the Plaintiff. Instead, management condoned and participated verbally in the sexual harassment of the Plaintiff, often laughing at the torture and total humiliation and degradation of the man. Often Ms. Waldrop would cry when she reported to management the horrific torture of the Plaintiff. Rather than take remedial action, management did nothing other than to laugh at the atrocities. The physical and emotional torture of a human being by ZF and its management was made with deliberate and specific intent to harm Plaintiff. The actions were caused, condoned and participated in by ZF and its management from which they gained a sick and perverted satisfaction.

9

20.     That employees with the knowledge, consent and encouragement of management, for years, up through the mid to late 2007, repeatedly played a highly offensive recording which degraded homosexuals of two men (actors) simulating homosexual relations (anal and oral) together loudly throughout portions of the facility for all to hear. At times the recording was played specifically for the so called "benefit" of truck drivers employed by USF Holland and other companies whose drivers frequently visited the Lancaster site to pick up product.

21.     That much of the sadistic sexual torture and harassment that is detailed above, occurred on a frequent basis over a period of  years and continued past the middle of 2007. Moreover, virtually all of it was repeatedly reported to ZF management located at the Lancaster facilities, which not only refused to stop the atrocities, but instead, through the acts of management, chose to participate in sexually harassing the Plaintiff. A senior manager asked the Plaintiff "how much" of a large pipe that the manager held in his hand could Plaintiff could "take" up his rear end. On another occasion, a manager came upon employees mercilessly beating the Plaintiff with their belts, but did nothing to the employees thereby, as before, encouraging, condoning and ratifying the savage beating of a helpless, fellow human being.

22.     That knowledge of the sadistic sexual torture of the Plaintiff was well know throughout Defendants ZF facilities. This torture was common knowledge among many employees throughout the ZF Lancaster plant, many having witnessed it and more having heard of it. Knowledge of these atrocities was well known among management and lower level employees who were not personal witnesses to it because the Plaintiff's awful plight was a popular source of conversation at the facility.

10

23.    That some employees reported the cuts and bruises that were clearly visible on the Plaintiff's body as the result of the brutal torture inflicted upon him, but management refused to take any actions that were logically calculated to halt or even diminish the vicious assaults. Instead, ZF management located at the Lancaster facilities not only failed to discharge or otherwise discipline the Plaintiff's torturers, it willfully, with deliberate and specific intent, injured the Plaintiff by participating in and consciously failing to protect him from further sexual assault, torture and harassment. Defendants ZF knew with certainly that the sadistic torture of Plaintiff was occurring and would continue to occur in the future on a virtually daily basis. The ZF Defendants required the Plaintiff to submit to continued physical and emotional abuse as a term and condition of his employment.

24.    That ZF, with direct and actual knowledge of the atrocities, required the Plaintiff, time and time again, to return to what had effectively become the company "torture chamber," to face his sadistic assailants, knowing the atrocities against him were absolutely going to continue to occur. ZF management had, as stated before, authorized, condoned and participated in the torture. His employers knew, when Plaintiff came to work, the shocking, inhuman assaults would continue to occur, day after day, month after month and so on.

25.    That ZF Defendants, through the actions and omissions of its management, fostered a sexually offensive atmosphere by asking Ms. Waldrop, in front of many male employees, "if she gave good head." "Did she like it on top?" Did she swallow?" These and similar questions and comments were heard by and repeated frequently by some of the male employees.

11

26.     That during the summer of 2007, Ms Waldrop's fifteen year old son called the ZF plant seeking his mother. He was told by two employees that his mother was out "F...ing a truck driver". The teenager was also told that Mr. Baucom was having anal sex with men and that the Plaintiff wanted to take a shower with the son and have anal sex with and to take pictures of the son naked. These ZF employees' false statements greatly upset Ms Waldrop's son (and defamed the Plaintiff).

27.     That Ms. Waldrop reported this offensive behavior to her supervisor who, as he had in the past, refused to take any action

28.     That after she reported the above, some employees' threatened the life of Ms. Waldrop. The two employees made threatening gestures to Ms. Waldrop. Death threats against the Plaintiff and Ms Waldrop had occurred in the past at the Lancaster facility. ZF Defendants did nothing to stop them.

29.     That around in July, 2007 Ms. Waldrop reported in detail the sadistic sexual torture and harassment that the Plaintiff had been subjected to as well as her own sexual harassment to Human Resources manager, Paul Stachura.

30.     That Ms. Waldrop's direct manager (who had condoned and participated in the torture of Plaintiff) refused to take action, noting in passing that the primary offending employee was "too valuable" to discipline. By this point in time, Defendants ZF's management had fielded well over a hundred complaints about the torture and the sexually offensive, hostile work environment at the ZF Lancaster facilities without taking meaningful remedial action; it had not even disciplined a single employee for the horrific conduct.

31.     That Stachura was, reluctantly, thereby compelled to acknowledge at least some of the sadistic torture and sexual harassment and other atrocities inflicted on the

12

Plaintiff. He failed and refused to fire or even mildly discipline anyone, thus confirming management's prior knowledge of, its condoning and ratification of the actions as well as its own deliberate or specific intent to harm the Plaintiff. Remarkably, one of the worst of the individual perpetrators of the atrocities was actually promoted.

32.    That next, Stachura, the Human Resources manager, reported to Ms. Waldrop that if she knew "what was good for her" she had better not ever again come back to his office and bring up such matters.

33.    That shortly thereafter, Dennis Dedrick, a senior manager, called Ms. Waldrop to his office. Although Waldrop's eleven year career with ZF had been spotless, Dedrick charged her with a relatively trivial timecard reporting error. Ms Waldrop had been out of work for medical treatment regarding a very serious workers' compensation injury and had made a simple error which may have cost the company all of twenty dollars. Dedrick, who had only recently been assigned to the Lancaster plant, said he already "knew all about her" and how she had gone over her manager's head and "cried" about the sexual harassment and torture. Dedrick stated to Ms Waldrop that he "despised" workers like her and did not wish to learn what the employee had to say; rather he wanted "her fired." Thereafter, Waldrop was set up for termination when management gave her a final warning for the minor error. The written warning, which disappeared from her desk that very day (her managers failed to give her another copy even though she asked for one) had an instruction in the middle of a very long single-spaced document that she was now required to get permission if she decided to leave work before five o'clock (even though she had worked at least an eight hour day).

34.    That shortly thereafter, Ms. Waldrop was terminated for leaving work at 4:30 P.M. without permission, even though she had worked through her lunch hour and

13

had worked more than eight hours. This was something she had done regularly in the past and had permission to do. Her termination contrasts to the treatment of men who engaged in much worse conduct regarding time and time clock issues, but were never disciplined; moreover the man who sexually tormented Baucom and sexually harassed Ms. Waldrop was *never* disciplined for his inhuman behavior, thus confirming their actions were made with the support of the ZF Defendants. Ms. Waldrop's termination was retaliatory and represents an effort by ZF Lancaster's management to conceal the sexual harassment and sadistic torture it had inflicted upon the Plaintiff.

35.     Before his last day at the plant, but after Ms. Waldrop had been terminated, Human Resources Director Stachura ordered the Plaintiff to destroy the pair of underwear that had been ripped off of him by employees and hung from the ZF time clock (he did not, and this evidence still exists). Stachura also ordered the Plaintiff to *never again* speak to the fired employee, Angela Waldrop. Plaintiff is currently disabled from working and has been diagnosed by a psychiatrist as suffering from post traumatic stress syndrome among other conditions.

36.     The Plaintiff was forced to go back to face his torturers, who remained unpunished and undeterred, knowing that Ms. Waldrop was no longer there to try to protect and help him. The Plaintiff continued to work throughout, before and after Ms. Waldrop's termination, because he has a wife and two disabled dependents to support. In addition, other pre-existing emotional factors made escape seem impossible for him. Therefore, he was compelled to accept the atrocities inflicted upon him as daily terms and conditions of his employment with ZF, as they had in fact become.

37.     That the ZF Defendants, even though they cannot now seriously deny the atrocities and management's prior knowledge and participation in them, has failed, upon

14

information and belief, to punish appropriately those responsible, thereby confirming its prior knowledge, ratification and condoning of the torture.

38.    That the Plaintiff has recently filed sexual harassment/gender discrimination charges under Title VII with the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission against his employers. Once he receives a determination after having exhausted his administrative remedies, he intends to file suit on said charges or to move to amend this complaint by adding such claims.

## FOR A FIRST CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)
### As to ZF Lemforder Corporation, ZF Commercial Suspension Systems & Components, LLC, and all individual Defendants except Rose)

39.    That the allegations contained in paragraphs 1 through 38 are re-alleged herein as if repeated verbatim.

40.    That the Defendants, with specific intent to harm Plaintiff, intentionally inflicted severe emotional distress or were certain that such distress would result from his or its conduct as alleged above; the conduct was so extreme and outrageous as to exceed all possible bounds of decency and the conduct must be regarded as atrocious and utterly intolerable in a civilized society. The actions of the Defendants have caused the Plaintiff severe emotional distress and the emotional distress suffered by the Plaintiff was so severe that no reasonable person could be expected to endure it.

41.    That as a direct and proximate result of the Defendants' intentional infliction of emotional distress upon the Plaintiff, he has experienced and will continue to experience emotional distress, humiliation, pain and suffering, damage to his reputation, embarrassment, wounded feelings, permanent impairment to his mind and body; he has

15

and will incur medical bills and costs, and has and will lose income in the nature of wages, fringe benefits and other losses. The Plaintiff is under intensive psychiatric care suffering from post traumatic stress syndrome and other serious psychological conditions as the direct result of the atrocities committed upon him.

42.    That the Plaintiff is entitled to actual damages from the Defendants and for punitive damages in amounts to be determined at trial.

### FOR A SECOND CAUSE OF ACTION
#### (Assault and Battery)
#### As to ZF Lemforder Corporation, ZF Commercial Suspension Systems & Components, LLC, Ryan Petroshus)

43.    That the allegations contained in paragraphs 1 through 42 are re-alleged herein as if repeated verbatim.

44.    That the Defendants specifically intended to and did put the Plaintiff in reasonable and immediate fear and apprehension of a harmful or offensive touching and did in fact touch or cause the Plaintiff to be touched in a harmful and offensive, painful and humiliating fashion on many occasions from 2003 until the latter part of 2007.

45.    That as a direct and proximate result of the Defendants' assault and battery of upon the Plaintiff, he has and will experience emotional distress, humiliation, pain and suffering, damage to his reputation, embarrassment, wounded feelings, permanent impairment to his mind and body; he has and will incur medical bills and costs, and has and will lose income in the nature of wages, fringe benefits and other losses.

46.    That the Plaintiff is entitled to actual and punitive damages from said Defendants in amounts to be determined at trail.

16

## FOR A THIRD CAUSE OF ACTION
### (Negligent Supervision/ Retention)
### As to ZF Group North American and Rose

47.    That the allegations contained in paragraphs 1 through 46 are re-alleged herein as if repeated verbatim.

48.    That the Plaintiff is not and was never an employee of Defendant ZF Group North American Operations, LLC.

49.    That ZF North American Operations, LLC oversaw operations and all personal matters of ZF Lemforder Corporation and ZF Commercial Suspension Systems & Components, LLC during all relevant times herein. Defendant Rose oversaw all personnel matters of the Lancaster ZF facilities. Upon information and belief, said Defendants owed a duty to protect the Plaintiff from the atrocities alleged hereinabove.

50.    That said Defendants had knowledge of or should have known that certain employees and supervisory personnel, including, Ryan Petroshus, Marty Catledge  Jay Cunningham (JC), Pete Jerosic, Kenny Moree Kevin Moore all employees of Defendants ZF, and others, had a habit of engaging in wrongful conduct in such a manner that was highly dangerous to others, in particular the Plaintiff. This wrongful conduct is set forth above in the factual allegations and consists, in part, of the sadistic torture of the Plaintiff.

51.    That the consistent and regular actions of these employees revealed a propensity or course of conduct sufficient to put Defendants Rose and ZF Group North American on notice of foreseeable harm to the Plaintiff and others, a harm it could have and should have prevented.

17

52.    That these Defendants, who knew or should have know of the dangers to Plaintiff, failed and refused to terminate or discipline the employees whom they knew or should have known posed a serious threat to the health and safety of the Plaintiff.

53.    That said Defendants were negligent, grossly negligent, reckless, willful and wanton failing to cause the discipline and or termination of Catledge, Cunningham, Petroshus Moree, Moore Jerosic and others, when it knew or should have known of the danger they posed to the Plaintiff and others.

54.    That the Defendants had the power and duty to protect the Plaintiff from these employees, but failed to do so and in failing to do so, breached their duty owed to the Plaintiff.

55.    That as a direct and proximate result of the conduct and breach of duty as set out above, the Plaintiff has suffered damages as set forth in Paragraph 43 hereof.

### FOR A FOURTH CAUSE OF ACTION
### (False Imprisonment)
### As to all Defendants except ZF North America and Rose

56.    That the allegations contained in paragraphs 1 through 55 are re-alleged herein as if repeated verbatim.

57.    That ZF Commercial Suspension Systems & Components, LLC and ZF Lemforder Corporation and its senior management, the individual defendants Ryan Petroshus, Dennis Dedrick, Frank Petroshus. and Greg Henderson with specific intent to harm either directly allowed, orchestrated, approved and/or participated in the false imprisonment of the Plaintiff as set forth in the factual allegations hereinabove and by restraining him against his will. This included tying him up, locking him in the back of parked or moving freight liners (trucks) and the like during the approximately four year

18

period. The Defendants made Plaintiff a virtual slave who was forced to submit to their torture and do as told.

58.     That the restraint of the Plaintiff by the Defendants was intentional, willful, unlawful, and with the intent to injure and humiliate the Plaintiff.

59.     That as a direct and proximate result of the false imprisonment Plaintiff as suffered damages as set forth in Paragraph 43 above.

60.     That the Plaintiff is entitled to actual and punitive damages from said Defendants.

### FOR A FIFTH CAUSE OF ACTION
### (Slander/Defamation per se)
### As to all Defendants

61.     That the allegations contained in paragraphs 1 through 60 are re-alleged herein as if repeated verbatim.

62.     That the Defendants defamed the Plaintiff by calling him a fagot, of being unchaste, an adulterer, committing sodomy, engaging in and wishing to have sex with a minor, engaging in and wishing to engage in child pornography and by stating or indicating that the Plaintiff was unfit to perform his job and/or unfitness in his profession or trade and represents slander/defamation per se of the Plaintiff. The atrocities committed against the Plaintiff by these Defendants were made during the course and scope of their employment with ZF Lemforder Corporation and ZF Commercial Suspension Systems & Components, LLC. The Defendants falsely stated, indicated or implied that the Plaintiff enjoyed and wished to have sex with minors, and wished to engage in illicit child pornography, that he enjoyed having sticks, brooms, pipes, boards and other items shoved up his rectum, as well as other false representations regarding Plaintiff and his sexual proclivities. Moreover, the placement of Plaintiff into humiliating

19

circumstances, such as in the nude or partially nude and other horrific circumstances and more, all as alleged in paragraph 17 above, damaged the reputation of the Plaintiff by painting him as a pervert who enjoyed illegal sexual activities and engaged in criminal conduct.

63.     That the statements and actions were published by the Defendants to many people throughout the plant and were repeated to many in and outside the plant who did not actually hear or witness the statements and actions.

64.     That the Defendants published the statements and actions knowing that they were false and perpetrated the re-telling of them and did nothing to stop the spread of the lies about the Plaintiff.

65.     That the actions, statements and publications by the Defendants were maliciously made, were know to them to be false, were made in reckless disregard for the truth or falsity of them, and were made with the intent to damage the Plaintiff.

66.     That the damages inflicted upon the Plaintiff are presumed due to the Defendants' slander/defamation *per se* of the Plaintiff by the Defendants, the Plaintiff's reputation has been damaged, he has suffered humiliation, wounded feeling and emotional distress as a result of the defamation, and other damage.

67.     That the willful, reckless and malicious injury to the Plaintiff and his reputation and a total, intentional disregard for his rights entitle the Plaintiff to actual and punitive damages from the Defendants.

### FOR A SIXTH CAUSE OF ACTION
### (Invasion of Privacy)
### As to all Defendants

68.     That the allegations contained in paragraphs 1 through 67 are re-alleged herein as if repeated verbatim.

20

69.    That the actions of the Defendants as set forth above placed the Plaintiff in a false light and exposed private matters that normally should be free from exposure. Said actions by the Defendants were substantial and unreasonable and of a nature that would cause mental injury to a person of ordinary feelings and intelligence under the same or similar circumstances.

70.    That the personal nature of the matters publically disclosed and the false light into which it placed the Plaintiff would horrify and subject any reasonable person to humiliation.

71.    That the Defendants took such actions in invading the privacy of the Plaintiff, acting maliciously, willfully and with personal knowledge of the nature of the matter and with specific intent to injure him. The Defendants succeeded and grievously damaged Plaintiff as set forth below.

72.    That as a direct and proximate result of the invasion of privacy of Plaintiff by Defendants, Plaintiff has and will experience humiliation, loss of reputation, pain and suffering, emotional distress, wounded feeling, permanent impairment to his mind and resulting physical pain, and loss of enjoyment of life.

73.    That the Plaintiff is entitled to actual and punitive damages from the Defendants.

21

WHEREFORE, Plaintiff prays for a jury trial, for judgment against the Defendants in the sum of Five Hundred Million and no/hundredths ($500,000,000.00) Dollars, for the costs of this action and for such other and further relief as this court may deem just and proper.

CROMER & MABRY

By: _____

Benjamin M. Mabry (SC #3487)
1225 Pickens Street
Post Office Box 11675
Columbia, South Carolina 29211-1675
Telephone:      (803) 799-9530
Facsimile:      (803) 239-0210
benmabry@cromermabry.com
cromermabry@cromermabry.com

January __15__, 2008

Columbia, South Carolina

22